**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2048
_____

KENNETH BAKER,
                              Appellant
v.

SUN LIFE AND HEALTH INSURANCE COMPANY

_____

On Appeal from United States District Court
for the District of New Jersey
(D. C. Civil No. 2-13-cv-01445).
District Court Judge: Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
May 16, 2018
_____

Before: McKEE, AMBRO, and SCIRICA, *Circuit Judges*

(Opinion filed: April 25, 2019)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

Kenneth Baker appeals the district court's grant of summary judgment in favor of Sun Life Insurance Company on Baker's claim that Sun Life erroneously terminated his long term disability benefits. For the following reasons we will affirm the district court.[1]

## I.

Where, as here, "the [disability plan] administrator has discretionary authority to determine eligibility for benefits," the decision to deny those benefits "must be reviewed under an arbitrary and capricious standard."[2] "Under this 'highly deferential' standard, an administrator's interpretation of a plan may be disturbed 'only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'"[3] Therefore, we do not "substitute [our] own judgment for that of the [plan administrator,]"[4] and only overturn the grant of summary judgment where the administrator's decision was "without reason."[5]

The district court correctly determined that the dispute centers on Baker's cognitive impairment and "whether [Baker] is able to perform the duties of 'Any Occupation,'" which is defined under the plan as "[a]ny gainful occupation that [the

---

[1] The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[2] *Doroshow v. Hartford Life & Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009). As Appellant recognizes, "[i]t is axiomatic that the arbitrary and capricious standard of review is extremely deferential." Appellant Br. at 19.

[3] *Felker v. USW Local 10-901*, 697 F. App'x 746, 749 (3d Cir. 2017) (quoting *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000)).

[4] *Doroshow*, 574 F.3d at 233.

[5] *Felker*, 697 F. App'x at 749 (citations omitted).

claimant is] qualified for on the basis of education, training or experience."[6] Sun Life

relied primarily upon two sources for its decision that Baker was able to perform the

duties of any occupation: (1) the conclusions of its experts, Dr. Barr, Dr. Ross, and Dr.

Pier, whose testing concluded that Baker was not cognitively impaired; and (2)

surveillance which showed Baker working from home, going on-site to conduct business,

and meeting with employees behind the counter at a Dunkin' Donuts location.[7] Sun Life

also performed a vocational evaluation and concluded that Baker could work as a

business owner, operations manager and retail store manager.[8] Accordingly, the district

court appropriately concluded that Sun Life's decision to terminate benefits was not

"without reason."

Baker argues that the district court erred by "completely dismiss[ing] the opinions

of Plaintiff's treating physicians[,] all of whom had been treating and clinically

evaluating Mr. Baker for years . . . and therefore were in the best position to attest to and

observe the cognitive decline."[9] Far from ignoring the opinions of Baker's treating

physicians, however, the court considered their opinions but rejected them because none

of Baker's doctors specialized in cognitive care. Accordingly, the court found Sun Life

could appropriately credit the opinions of its experts over Baker's because "the treating

physicians . . . did not specialize in cognitive functioning and they did not provide

---

[6] *Baker v. Sun Life & Health Ins. Co.*, No. 13-1445, 2015 WL 12880571 at *7 (D.N.J. Feb. 4, 2015).
[7] *Id*. at *2.
[8] *Id*. at *3.
[9] Appellant Br. at 22.

3

sufficient support for their conclusions regarding [Appellant's] alleged cognitive decline."[10]

Baker also contends that the court erroneously accepted the conclusions of Sun Life's expert Dr. Barr, who allegedly "issued a report which was fundamentally inconsistent with the results of his own neuropsychological testing."[11] However, the court considered Baker's experts' contrary conclusions,[12] but neither Sun Life nor the district court was required to credit these opinions over those of the insurer.[13] As the court noted, Dr. Barr, a neuropsychologist, performed testing on Baker and concluded that Plaintiff showed no signs of cognitive impairment.[14] Dr. Barr's conclusions were supported by Dr. Ross, also a neuropsychologist, who concluded that, based on "neuropsychological evaluations and [Dr. Barr's] raw data," Baker's cognitive test results were "consistent with generally intact cognitive functioning[,] . . . [which] would not translate into a permanent chronic impairment."[15] The district court concluded that Sun Life's reliance on these opinions was reasonable.

---

[10] *Baker*, 2015 WL 12880571 at *7.

[11] Appellant Br. at 20.

[12] *See, e.g.*, *Baker,* 2015 WL 12880571 at *7 (considering but declining to credit the report of Appellant's expert Dr. Carnevale).

[13] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

[14] *Baker*, 2015 WL 12880571 at *8.

[15] *Id*. Appellant's expert Dr. Carnevale conducted a neurological examination on Baker and concluded that Baker had chronic cognitive impairments. *Id*. at *7. However, Dr. Carnevale's conclusions were in turn called into question by Dr. Pier, another neuropsychologist, who found that Dr. Carnevale did not assess effort and validity in his evaluation. *Id*.

4

Baker also argues that the district court failed to adequately consider Sun Life's conflict of interest. This contention is also without merit. The district court began its analysis by acknowledging Sun Life's conflict of interest as Sun Life both administered and paid the Plan benefits.[16] The court appropriately considered the conflict as one factor in its decision,[17] but concluded that Baker did not demonstrate a "sufficient causal link between Sun Life's financial incentives . . . and Plaintiff's denial of benefits."[18]

Baker's contention that the district court violated federal rule of civil procedure 56 by failing to draw all reasonable inferences in favor of the non-moving party also fails. Under ERISA, we have explained that the arbitrary and capricious standard mandates that the claim determination is affirmed if it is supported by "substantial evidence."[19] The Plan administrator's determination "will not be disturbed if reasonable."[20] The district court analyzed the bases for Sun Life's determination and found that Sun Life had substantial evidence for its determination.[21] Moreover, Sun Life's expert's opinions were not the sole basis of its decision. Sun Life and the district court also relied on the results of Sun Life's investigation which showed that Baker was performing job functions:

---

[16] *Id.* at \*7.

[17] *Id.* The district court correctly acknowledged "[i]f a 'benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'" *Id.* (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (concluding that "a conflict should be weighed as a factor" in evaluating ERISA claim) (internal quotations omitted).

[18] *Baker*, 2015 WL 12880571 at \*7.

[19] *Doroshow*, 574 F.3d at 234.

[20] *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d. Cir. 1997) (quoting *Firestone*, 489 U.S. at 114).

[21] *Baker*, 2015 WL 12880571 at \*8.

visiting "Dunkin' Donuts locations for two or more hours at a time, while carrying a binder, standing behind the counter, and having discussions with employees."[22] A Dunkin' Donuts employee also indicated that Baker had been performing other job functions.[23]

Finally, Baker argues that the decision to deny partial disability benefits deprived him of a full and fair review. The partial disability provision of Baker's policy provides that, after 24 months, a claimant will be considered "Partially Disabled" only if: he or she is *both* "unable to perform the duties of Any Occupation; *and* [he or she is] performing at least one of the material duties of [his or her] Regular or Any Occupation on a Full-time Basis or Part-time Basis."[24] The court concluded that because the first condition was not met – namely, because Sun Life found that Baker was not "unable to perform the duties of Any Occupation" – he was not eligible for partial disability payments.[25] The district court's reasoning is sound.

## II.

For the reasons stated above we will affirm the court's grant of summary judgment to Sun Life.

---

[22] *Id*. at *7.
[23] *Id*. "During this time, Dunkin' Donuts employees indicated that Plaintiff was working either from home, the stores, or on the road." *Id*.
[24] *Id*. at *8.
[25] *Id*.